IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| JEFFERY HENSON, | : | |
| | : | |
| Petitioner, | : | |
| | : | NO. 3:11-CV-81 (CDL) |
| VS. | : | |
| | : | |
| DARRELL HART, WARDEN, | : | |
| | : | Proceedings Under 42 U.S.C. §1983 |
| Respondent. | : | Before the U.S. Magistrate Judge |
| _____ | : | |

### RECOMMENDATION

Before the Court is Petitioner Jeffery Henson's 28 U.S.C. § 2254 petition seeking habeas corpus relief. Doc. 1. The petition as amended contains eight grounds for relief: six claims that he received ineffective assistance of counsel, one claim that he was illegally sentenced to life imprisonment, and one claim that he was denied procedural due process at his state habeas corpus proceeding. Because Petitioner's grounds either fail to state a claim or are procedurally defaulted, **IT IS RECOMMENDED** that the petition be **DENIED**. Also before the Court is Petitioner's Motion for Summary Judgment (Doc. 20) and Motion for New Trial (Doc. 22). In view of the Court's recommendation to dismiss the instant petition, **IT IS RECOMMENDED** that Petitioner's motions be **DENIED**.

### PROCEDURAL HISTORY

On December 7, 2005, Petitioner and three co-defendants were jointly indicted by the Clarke County, Georgia Grand Jury for armed robbery, theft by receiving a motor vehicle, and wearing masks. Doc. 13-4 at 84. Following an August 2006 jury trial of Petitioner and co-defendant Armand Payne, a mistrial was declared due to a deadlocked jury. Doc 13-1 at 2. After the two men were tried for a second time in September 2006, a jury found Petitioner guilty of

1

armed robbery and theft by receiving a motor vehicle. Doc. 13-5 at 101. Petitioner was sentenced to life imprisonment for armed robbery and ten years for theft by receiving, to be served concurrently. Id. Petitioner then filed a direct appeal, which was denied in by the Georgia Court of Appeals in an unreported decision dated November 26, 2007. Henson v. State, No. A07A1565 (Ga. App.); Doc. 13-1.[1]

On June 25, 2008, Petitioner filed a petition for habeas corpus relief in the Superior Court of Ware County, Georgia. Doc. 13-2. In his state habeas corpus petition, Petitioner raised six grounds alleging ineffective assistance of counsel and one ground alleging trial court error for imposing a life sentence. Doc. 14-13. Following an evidentiary hearing in May 2009, the state habeas corpus court denied relief. Id. On May 19, 2011, Petitioner filed the instant Section 2254 petition raising six grounds alleging ineffective assistance of counsel. Doc. 1. On July 28, 2011, Petitioner filed an amended Section 2254 petition raising and additional ground alleging that he was denied procedural due process at the state habeas corpus proceedings. Doc. 9.

## STATEMENT OF FACTS

In accordance with 28 U.S.C. § 2254(e)(1), and for purposes of considering the instant petition, the facts as found by the Georgia Court of Appeals on direct appeal of Petitioner's criminal case are adopted by this court. These facts are as follows:

> Viewed in [a light most favorable to the jury's verdict], the evidence showed the following relevant facts. At approximately 2:00 p.m. on October 21, 2004, two employees of Banteck West, Inc., an armored car courier service for banks, went in an armored car to a branch of Bank of America in Athens. The driver backed the armored car into a space in front of the bank, and the second employee, Chauncey Roland, went inside the bank to deliver some money. About five minutes later, Roland opened the back doors of the armored car to put a bag of money inside and get some coins for the bank. As he was taking boxes of coins out of the armored car and placing them on a hand-truck, Roland heard a noise, looked up, and saw a black man with a bandana over his face running toward the armored car. Roland ran to the passenger side of the armored car, but could not

---

[1] Petitioner was represented by Attorney David Crowe both at trial and on direct appeal.

get in. He saw a second man get out of a nearby burgundy SUV with a shotgun. Roland ran across the parking lot and took cover behind a car. When he turned around, he saw two men behind the armored car.

The armored car driver testified that, while he was waiting for Roland to make the delivery, he looked back and saw a black man with a bandana on his face in the back of the armored car with a shotgun. He also saw another man standing behind the armored car, and he called 911. At the same time, a witness exited the bank and saw a tall, black man holding a long gun at the rear of the armored car. The robber picked up some bags and boxes and ran around the side of the building. Another witness saw a black male with a shotgun and a bag running across the parking lot and yelling. A bank employee then saw Roland run back toward the armored car with his gun; the bank employee called the police. A Banteck employee later confirmed that the robbers stole approximately $102,000.

The robbers fled the scene in a burgundy SUV, and an officer issued a "be on the lookout" alert for two black males wearing bandanas and armed with a shotgun driving a new model burgundy SUV. Officers found the car a short distance from the bank. The car had been stolen about two weeks before.

A few days after the robbery, a witness heard a man, Darius Smith, bragging that he had robbed a bank truck with his brother, and the witness saw that Smith had "stacks" of cash. The witness contacted the police. Investigators also received information that Smith was at the mall the evening of the robbery spending large amounts of cash and threatening people with a gun. Investigators arrested Smith for the armed robbery, and Smith gave a custodial statement in which he described how he, Henson and Armand Payne committed the robbery. Smith also implicated Henson's wife, Yolanda Wilcher.

Smith, Payne, Henson and Wilcher were indicted for armed robbery and other offenses related to the robbery. Wilcher and Smith pled guilty before the August 2006 trial, and they testified against Henson and Payne. At the September retrial, Smith testified again, but Wilcher withdrew her guilty plea and refused to testify.

Smith testified that Henson called him on the morning of the robbery, and he met Henson and Payne in a parking lot near the bank. Henson was driving a maroon SUV, and when Smith got into the SUV, he saw a shotgun and a handgun inside. Henson parked the SUV near the armored car. Payne got out of the SUV and ran toward the armored car. Henson followed, then Smith. While Payne was in the armored car, Henson stood outside holding a shotgun. Payne tossed out the money and Smith put it in the SUV. Henson then told Smith and Payne to get in the SUV, and Henson drove them to a nearby apartment complex, where they met Wilcher. They transferred the money to Wilcher's car and drove to Henson's house, where they split up the money.

> After Wilcher refused to testify, the State read a redacted transcript of Wilcher's August trial testimony. According to Wilcher, Henson called her the day of the robbery and asked her to pick him up in an apartment parking lot. A few minutes after Wilcher arrived at the lot, Henson drove up in a burgundy SUV. Henson got into her car along with Payne and Smith, who moved plastic bags from the SUV into Wilcher's car. Wilcher drove to her home, and the men got out and took the bags into a back room.
>
> In addition, the evidence showed that, a few months after the robbery, Henson paid $6,000 cash for a Corvette and about $2,200 cash for a Nissan Maxima. A witness testified that Henson told her the cash came from the robbery in this case.

Henson v. State, No. A07A1565 (Ga. App. Nov. 26, 2007) (Doc. 13-1).

## NEED FOR AN EVIDENTIARY HEARING

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244, if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). After a review of the record in this case, and in light of the above fact statement, no evidentiary hearing is warranted in this case.

## LEGAL STANDARDS

In accordance with the provisions of 28 U.S.C. § 2254(d), this court is prohibited from granting relief with respect to any claim adjudicated on the merits in state court proceedings unless that adjudication either: (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court

or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Williams v. Taylor, 529 U.S. 362, 402-13 (2000).

A state court decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir.2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." Id. "An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id. Moreover, when a "state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

## DISCUSSION

Petitioner's amended Section 2254 petition raises eight grounds for relief. The first six grounds allege that Petitioner's counsel was constitutionally ineffective. Petitioner claims that counsel was ineffective for: (1) failing to impeach the State's main witness/victim Chauncey Roland; (2) failing to preserve for appeal a claim of prosecutorial misconduct; (3) failing to raise on appeal a claim that the State presented "false evidence" that Yolanda Wilcher had pleaded guilty; (4) failing to call a subpoenaed witness to testify for the defense; (5) failing to cite any authority on appeal that would support a finding that Yolanda Wilcher's testimony was inadmissible; and (6) failing raise on appeal a claim of ineffective assistance of counsel against

himself. Petitioner's final two grounds allege that he was illegally sentenced to life imprisonment and that he was denied due process at his state habeas corpus hearing. Because Petitioner's grounds either fail to state a claim or are procedurally defaulted, Petitioner is not entitled to relief.

### Ground One

In Ground One, Petitioner alleges that he received ineffective assistance of counsel because his trial counsel failed to impeach the State's main witness/victim Chauncey Roland at the second trial with Mr. Roland's inconsistent testimony from the first trial.[2] Petitioner contends that Mr. Roland testified at the first trial that "[Mr. Roland] was intimidated by an unarmed man which caused him to flee and abandon the armored truck," but changed his testimony at the second trial to indicate that he saw someone with a firearm prior to running away from the truck. Doc. 12. Petitioner argues that counsel's failure to impeach Mr. Roland with his prior testimony prevented the jury from properly evaluating the strength of Mr. Roland's recollection of the events. Petitioner further argues that the disparities in Mr. Roland's recollection of the events could have led the jury to find him guilty of the lesser charge of robbery by intimidation.

Petitioner attempted to argue this issue in his state habeas action. Ground One of Petitioner's state habeas petition alleged the same claim of ineffective assistance of counsel, but the state habeas court mistakenly believed that Petitioner's claim referred to counsel's failure to

---

[2] Ground One appears to be two-fold. Petitioner contends that the transcript form the first trial should have been provided and that counsel failed to cross-examine Mr. Roland using the available tape recording of the testimony. Petitioner alleges that counsel was "hindered in fully cross-examining Mr. Roland" because the transcript of Roland's testimony from the first trial was not transcribed prior to the second trial. Petitioner cites Britt v. North Carolina, 404 U.S. 226 (1971), to support his claim that he was entitled to the transcript of Roland's testimony from the first trial. Pursuant to Britt, the availability of an alternative device that would fulfill the same functions as a transcript would render the first transcript unnecessary. See id. at 227. In this case, a tape recording of Mr. Roland's testimony from the first trial was available. As such, any claim arising from the trial court's failure to provide the transcript is without merit. Accordingly, Ground One is addressed as counsel's failure to impeach Mr. Roland using the available tape recording.

6

impeach co-defendant Darius Smith.[3] Because Petitioner included "main witness/victim" on his state habeas corpus petition, Petitioner has exhausted the claim, and the claim will now be taken up on its merits.

The Sixth Amendment of the United States Constitution states that "in all criminal prosecutions, the accused shall enjoy…the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel provision guarantees the accused the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970).  To prevail on a claim of ineffective assistance of counsel, the petitioner bears the burden of establishing by a preponderance of the evidence that: (1) his attorney's performance was deficient, *and* (2) he was prejudiced by the inadequate performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000). A petitioner must prove both prongs of the Strickland test to show his counsel was ineffective. Id.

To establish deficient performance, a petitioner must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. Chateloin v. Singletary, 89 F.3d 749, 752 (11th Cir. 1996). A strong presumption exists that counsel's performance was reasonable and the challenged action constituted sound trial strategy. Id.  In order to establish that counsel's performance was unreasonable, a petitioner must show that no objectively competent counsel would take the action in question. Van Poyck v. Florida Department of Corrections, 290 F.3d 1318, 1322 (11th Cir. 2002).

---

[3] The state habeas court likely misconstrued Darius Smith as the "State's main witness/victim" based on the testimony of Petitioner's counsel. Counsel testified at Petitioner's state habeas corpus proceedings via deposition. Doc. 13-3. After counsel was asked to explain why he failed to impeach the State's main witness, counsel responded, "[b]y main witness, I believe Mr. Henson is more than likely referring to his co-defendant, Darius Smith." Doc. 13-3 at 38.

To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the outcome of the proceedings would have been different. Strickland, 466 U.S. at 697; Meeks v. Moore, 216 F.3d 951, 960 (11th Cir. 2000). Reasonable probability is defined as a "probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694). If a petitioner fails to prove that he has suffered prejudice, the court need not address the deficient performance prong of the Strickland test. Holiday v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

Because the record shows that Mr. Roland was effectively cross-examined by co-defendant's counsel at the second trial, Petitioner was not prejudiced by counsel's failure to impeach Mr. Roland with the tape recording of the prior testimony. As Petitioner contends, there were inconsistencies throughout the proceedings in Mr. Roland's testimony regarding his location when he first noticed a firearm during the robbery. Mr. Roland, however, ultimately admitted on cross-examination that his testimony had changed throughout the proceedings.

Mr. Roland's testimony regarding his location when he first noticed the firearm changed multiple times. At the first trial, Mr. Roland's testimony changed three times. On direct examination, Mr. Roland first testified that he noticed the individual holding a shotgun coming out of the SUV as Mr. Roland began to run away from the armored truck. Doc. 13-6 at 71. Mr. Roland then testified on direct examination that "once that first guy ran up that's when I—I mean, it was like instantly[,] that's when I seen the shotgun." Id. at 74. On cross examination, Petitioner's counsel impeached Mr. Roland with a statement that Mr. Roland gave to police shortly after the incident. Id. at 100. In that statement, Mr. Roland stated that he "ran about 15 to 20 feet away, stopped, looked back, and then that's when [I] saw the suspect [with the shotgun]." Id.. At the first trial, Mr. Roland did not deny the accuracy of the statement and essentially

8

adopted the statement as his testimony. Mr. Roland also testified that he was "safe" in the area fifteen to twenty feet away because he did not believe that the individuals would shoot him across the parking lot.

At the second trial, Mr. Roland's testimony was again inconsistent. On direct examination, Mr. Roland testified that he saw the individual with the shotgun prior to running away from the truck. Doc. 13-9 at 58. On cross examination, Petitioner's counsel once again attempted to impeach Mr. Roland with his statement to the police. Id. at 97. On this occasion, however, Mr. Roland testified that the statement to the police was incorrect and that he saw the shotgun prior to running away from the truck. Id. at 98. Counsel then questioned Mr. Roland regarding his testimony from the first trial, and Mr. Roland stated that he believed that his testimony at the second trial was the same as at the first trial. Id. at 99. Petitioner's counsel then indicated that he planned to later use the tape recording to impeach Mr. Roland. Id.

Immediately following cross-examination by Petitioner's counsel, Mr. Roland was cross-examined by co-defendant's counsel. While being cross-examined by co-defendant's counsel, Mr. Roland admitted that his testimony from the first trial was likely different from his testimony at the second trial. When first asked about his testimony from the first trial, Mr. Roland responded, "I can't remember that." Id. at 106. After counsel continued questioning Mr. Roland regarding his previous testimony, Mr. Roland responded:

> …But all I can tell you is throughout this whole thing, throughout those statements, throughout everything I was the victim and I was nervous. I was nervous and I was afraid of everything. I don't care if—I was nervous when I went home and I wasn't even at the scene anymore. All right? So when I seen that—once I saw that shotgun—I seen the shotgun at the back of the vehicle point blank period. I'm sorry my—**my words have changed and I'm sorry that whatever I said last time was different**….

Id. at 110 (emphasis added). When asked for the final time about his previous testimony, Mr.

9

Roland responded, "[s]ee, that's what I'm saying, I can't even remember. If I said it—you probably know better than I do, seriously. I don't know. If I—if I said that, then I did…." Id. Because Mr. Roland admitted that his testimony had changed from the first trial, Mr. Roland was effectively impeached. Co-defendant's counsel was able to make the jury aware that Mr. Roland's testimony had changed multiple times. Accordingly, Petitioner was not prejudiced by his counsel's failure to impeach Mr. Roland with the tape recording.

Because Petitioner did not suffer any prejudice despite counsel's failure to impeach Mr. Roland with the tape recording of his prior testimony, Petitioner did not receive ineffective assistance of counsel. Accordingly, Petitioner is not entitled to relief on Ground One.

### Ground Two

In Ground Two, Petitioner alleges he received ineffective assistance of counsel because his counsel failed to preserve for appeal a claim of prosecutorial misconduct. Petitioner claims that the prosecutor provided misleading information to the court in order to justify a preemptory strike against a potential black juror. Specifically, Petitioner contends that the prosecutor relied on the fact that a juror had been arrested, when there was no evidence that the state had run a "criminal check" on the juror. Additionally, the prosecutor stated that anyone who had been charged with a crime would be struck from the jury, when in fact nine jurors sitting on the jury panel had been charged with crimes. See Petitioner's Appellate Brief at 7 (Doc. 13-3 at 90). Petitioner claims that although counsel objected at trial, counsel did not raise the issue in Petitioner's motion for new trial.

Petitioner argued this issue in his state habeas corpus action. The state habeas court found that contrary to Petitioner's assertions, counsel saw no evidence of prosecutorial misconduct. Doc. 14-13. Accordingly, there was no need to preserve the non-issue for appeal. Doc. 14-13.

Petitioner asserts in his federal petition that counsel did in fact find evidence of prosecutorial misconduct because counsel objected to the issue regarding the preemptory strike at trial. Despite Petitioner's assertion that counsel did not preserve this issue for appeal, counsel did raise the Batson[4] issue on appeal. On appeal, counsel argued that the State's reasoning for striking the juror—that the juror had been charged with a crime—was merely a pretext for discrimination because the State did not in fact strike every juror who had been charged with a crime. Petitioner's Appellate Brief at 7 (Doc. 13-3 at 90). Counsel also argued that the State had no way of knowing that the juror had been charged with a crime. Id. Despite counsel's arguments, the appellate court denied the claim. Doc. 31-1.

Petitioner implies that counsel should have raised both the Batson issue itself and the issue of prosecutorial misconduct relating to the Batson issue. To constitute prosecutorial misconduct, the statements must (1) be improper and (2) prejudicially affect the substantial rights of the defendant. U.S. v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." Id. (quoting United States v. Hall, 47 F.3d 1091, 1098 (11th Cir. 1995). Accordingly, to succeed on a claim of prosecutorial misconduct regarding the Batson issue, Petitioner would have to show both that the prosecutor's conduct was improper and that he would have succeeded on the merits of the issue. By raising the issue on the merits rather than in the form of prosecutorial misconduct, counsel eliminated an element that he would have had to prove. As such, it was reasonable for counsel to argue the issue on its merits rather than in the form of prosecutorial misconduct.

Because counsel raised the Batson issue on appeal, counsel was not ineffective. The state court's holdings reflect a reasonable finding of the facts based on the trial transcripts are

---

[4] Batson v. Kentucky, 476 U.S. 79 (1986).

11

consistent with clearly established federal law. The record shows that counsel's conduct was within the "wide range of professionally competent assistance" required by Strickland. Accordingly, Ground Two has no merit.

Ground Three

In Ground Three, Petitioner claims that he received ineffective assistance of counsel because counsel failed to raise on appeal a claim that the State presented "false evidence" that Yolanda Wilcher had pleaded guilty. Petitioner asserts that the redacted transcript of Ms. Wilcher's testimony that was read at the second trial stated that Ms. Wilcher is pleading guilty, when in fact Ms. Wilcher had withdrawn her guilty plea.

Petitioner argued this issue in his state habeas corpus action. The state habeas court found that counsel was not ineffective for failing to raise the issue of prosecutorial misconduct on appeal because Petitioner did not satisfy either Strickland requirement. The requirements of Strickland also apply to a claim of ineffective assistance of appellate counsel. Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991). Further, counsel cannot be found ineffective for failing to raise every non-frivolous defense. Chandler v. United States, 218 F.3d 1305, 1319 (2000). Counsel must use his or her judgment to determine which claims and arguments to emphasize, which may require counsel to rule out other non-frivolous claims and arguments. Id.

In this case, the state habeas court found that counsel's decisions as to what issues to raise or not raise on appeal were reasonable. Counsel did not raise an issue of prosecutorial misconduct on appeal because counsel did not think there was a basis for the claim. Moreover, the trial court judge determined the portions of Ms. Wilcher's testimony that were allowed to be read to the jury following counsel's objection. Doc. 14-5 at 35. As such, the prosecutor's reading of that part of the testimony was not improper.

Accordingly, the state court's holdings reflect a reasonable finding of the facts based on the trial transcripts are consistent with clearly established federal law. The record shows that counsel's conduct was within the "wide range of professionally competent assistance" required by Strickland. Ground Three therefore has no merit.

## Ground Four

In Ground Four, Petitioner claims that he received ineffective assistance of counsel because counsel failed to call witness Termedric Faust to present evidence on Petitioner's behalf. Petitioner argued this issue in his state habeas corpus action. The state court found counsel's performance was reasonable because Mr. Faust informed counsel that he did not have any testimony that would aid the defense. After consulting with Petitioner, counsel decided that it was not sound strategy to call Mr. Faust to testify. Reasonable strategic decisions are not grounds for ineffective assistance of counsel. See Chateloin v. Singletary, 89 F.3d 749, 752 (11th Cir. 1996). The state court also found that Petitioner failed to show the required prejudice from counsel's failure to call Mr. Faust.

The record shows that counsel's decision not to call Mr. Faust to testify was reasonable. Counsel testified that Mr. Faust was agitated and did not want to cooperate. Doc. 13-3 at 41. Although counsel also testified that he now wishes he had called Mr. Faust to testify, counsel's performance may not be viewed in hindsight. See Waters v. Thomas, 46 F.3d 1506, 1513 (11th Cir. 1995). Because counsel determined at trial that calling Mr. Faust would not be helpful, his performance was reasonable. As such, the state court's holdings reflect a reasonable finding of the facts based on the trial transcripts are consistent with clearly established federal law. Accordingly, Petitioner is not entitled to relief on Ground Four.

Ground Five

In Ground Five, Petitioner claims he received ineffective assistance of counsel because counsel failed to cite any authority on appeal to support a finding that Yolanda Wilcher's testimony from the mistrial was inadmissible on retrial. Additionally, Petitioner claims that counsel was precluded from advancing further argument on appeal because counsel failed to object to Ms. Wilcher's testimony at the first trial based on marital privilege.

Petitioner raised this argument in his state habeas action. The state court found, contrary to Petitioner's allegations, that counsel did raise issues on appeal pertaining to Ms. Wilcher's prior redacted testimony. On appeal, counsel argued that Ms. Wilcher's testimony should not have been admitted based on three grounds: because Petitioner was denied his statutory and constitutional right to a thorough and sifting cross-examination; because the parties at issue under O.C.G.A. § 24-3-10 were different in the second trial; and, because Petitioner's right to confront witnesses against him was violated. Petitioner's Appellate Brief at 22-26 (Doc. 13-3 at 105-09). Counsel testified that he attempted to cite all of the relevant law and to argue the issues in his brief. Doc. 13-3 at 42. Counsel also testified that he still stands by his arguments and believes that Ms. Wilcher's testimony should not have been read at the second trial. Id.

Any claim that counsel's allegedly unreasonable performance at the first trial precluded effectively appealing his conviction from the second trial is without merit. Petitioner contends that counsel was ineffective at the first trial for failing to object to Ms. Wilcher's testimony after she invoked her marital privilege. The records show, however, that Ms. Wilcher voluntarily testified against Petitioner at the first trail. On direct examination, Ms. Wilcher was asked if she agreed to waive any clam that she may have had to marital privilege, to which Ms. Wilcher initially responded "no." Doc. 13-7 at 7. The prosecutor immediately rephrased the question,

14

asking, "you're agreeing that even though you're married to Mr. Henson that you have agreed to testify?" Id. Ms. Wilcher responded "yes." Id. Under Georgia law, the testifying spouse is the person who decides whether or not to testify, not the non-testifying defendant. Braithwaite v. State, 275 Ga. 884, 886-87 (2002). Ms. Wilcher had her own counsel, was advised of the marital privilege, and agreed to testify. Accordingly, Petitioner's counsel was not deficient for failing to object to Ms. Wilcher's testimony or failing to further explain the marital privilege to Ms. Wilcher. See id.

Because the record shows that counsel was not ineffective on appeal regarding raising issues about the admissibility Mr. Wilcher's testimony at the second trial, the state court's findings are supported by the record and are consistent with clearly established federal law. As counsel's performance was within the requirements of Strickland, Ground Five is without merit.

## Ground Six

In Ground Six, Petitioner claims that he was illegally sentenced to life imprisonment. Petitioner raised this issue at his state habeas proceeding. The state court found that the claim was procedurally defaulted because Petitioner did not raise the claim on direct appeal. The state court also found that Petitioner could not establish cause and actual prejudice because Georgia's armed robbery statute, O.C.G.A. § 16-8-41, allows a life sentence to be imposed for a first conviction. Because Petitioner has again failed to establish cause and prejudice or to show a miscarriage of justice, further review of this procedurally defaulted claim is precluded by this Court. See Coleman v. Thompson, 501 U.S. 722, 735 (1991).

Petitioner asserts in his reply brief that he attempted to raise this ground at his state proceeding as an ineffective assistance of counsel claim for counsel's failure to raise the issue on direct appeal. An ineffective assistance of counsel claim is also without merit as counsel's

decision not to raise the issue was reasonable because O.C.G.A. § 16-8-41(b) provides that a life sentence may be imposed for the first conviction of armed robbery. Accordingly, Petitioner is not entitled to relief on Ground Six.

### Ground Seven

In Ground Seven, Petitioner claims that his counsel was ineffective for failing to raise the issue of ineffective assistance of counsel on appeal. Upon review of the record, it does not appear that Petitioner raised this issue in his state habeas corpus hearing. Because Petitioner failed to raise this ground in the state proceedings, his claim is both unexhausted and procedurally defaulted.

A federal court may not consider an application for writ of habeas corpus on behalf of a person in state custody unless the petitioner has first exhausted his remedies in state courts. See 28 U.S.C. § 2254(b)(1)(A). Further, Georgia's successive petition rule for habeas corpus cases provides that all grounds for relief must be raised in the original or amended state habeas petition. O.C.G.A. § 9-14-51. When it is clear that the unexhausted claims would be procedurally barred in state court due to a state law procedural default, federal courts may treat those claims as barred and deny relief. Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998). Where procedural default bars litigation of a constitutional claim in a state court, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice, Engle v. Issac, 456 U.S. 107, 129 (1982), or a showing that a fundamental miscarriage of justice would occur if the federal court did not consider the claim. Coleman, 501 U.S. 722, 735 n. 1 (1991).

Petitioner failed to raise this ground in the state habeas proceedings, and Georgia's successive petition rule bars Petitioner from now raising the ground in the state habeas court.

Further, Petitioner has failed to establish cause and prejudice or to show a miscarriage of justice. As such, further review of this procedurally defaulted claim is precluded by this Court.

Although the record does not contain an amended state habeas petition, Petitioner claims that he raised this ground in his amended state petition. Even if Petitioner raised this ground in an amended state court petition, thus eliminating issues of exhaustion and procedural default, Petitioner's claim lacks merit. Petitioner has failed to show that failure to raise an ineffective assistance of counsel claim against oneself is unreasonable "under prevailing professional norms." See Strickland, 466 U.S. at 688. Moreover, because Petitioner failed to show that his counsel was ineffective at trial, he cannot make a showing of prejudice from counsel's failure to raise an ineffective assistance of counsel claim on appeal. Petitioner's argument that "[t]here is a presumption that Petitioner wanted to raise ineffective assistance of trial counsel on appeal in the Georgia Court of Appeals, even though he did not speak those precise words" is also unconvincing. Accordingly, Petitioner is not entitled to relief on Ground Seven.

### Ground Eight

In Ground Eight, Petitioner claims that he was denied due process when the state habeas court failed to use its discretion to re-open his case. Petitioner further contends that he was not given an opportunity to reply to the State's response to his petition. Petitioner was given a hearing at his state habeas proceedings and ample opportunity to present his case. The Georgia Supreme Court reviewed Petitioner's application for a certificate of probable cause to appeal the denial of his state habeas corpus and denied relief. Moreover, it is well established in the Eleventh Circuit that defects in state collateral proceedings do not provide a basis for federal habeas relief. See, e.g., Anderson v. Secretary for Department of Corrections, 462, F.3d 1319, 1330 (11th Cir. 2006). "[Although] habeas relief is available to address defects in a criminal

defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004). Any alleged failure of the state court to fail to re-open Petitioner's case or fail to allow Petitioner to reply does not assert a challenge to the validity of Petitioner's conviction or sentence. Accordingly, Petitioner is not entitled to relief on Ground Eight.

## CONCLUSION

Because Petitioner has failed to demonstrate that any claim adjudicated on the merits in the state court resulted in a decision that was: (1) unreasonable in light of the evidence; or (2) contrary to or the result of an unreasonable application of clearly established federal law as determined by the United States Supreme Court, it is **RECOMMENDED** that his petition be **DENIED**. In light the above recommendation, it is further **RECOMMENDED** that Petitioner's Motion for Summary Judgment and Motion for New Trial be **DENIED**.

Pursuant to the requirements of Section 2254 Rule 11(b), it does not appear that Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Accordingly, **IT IS FURTHER RECOMMENDED** that the Court deny a certificate of appealability in its final order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the district judge to whom this case is assigned within fourteen (14) days after being served with a copy thereof.

**SO RECOMMENDED**, this 5th day of July, 2012.

s/ Charles H. Weigle_____<br>
Charles H. Weigle<br>
United States Magistrate Judge